# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3147-18T1

IN THE MATTER OF
REGISTRANT J.P.

Argued telephonically May 7, 2020 –
Decided May 19, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. 18010056.

Jesse M. DeBrosse, Assistant Deputy Public Defender, argued the cause for appellant J.P. (Joseph E. Krakora, Public Defender, attorney; Jesse M. DeBrosse, of counsel and on the brief).

Mario C. Formica, Deputy First Assistant Prosecutor, argued the cause for respondent State of New Jersey (Damon G. Tyner, Atlantic County Prosecutor, attorney; Mario C. Formica, of counsel and on the brief).

PER CURIAM

Registrant J.P. pled guilty to two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), each naming as the victim a separate child

residing in J.P.'s household. In accord with the plea agreement, on February 21, 2014, the judge sentenced defendant in the second-degree range, eight years concurrent on each crime, subject to the No Early Release Act's eighty-five percent parole ineligibility. N.J.S.A. 2C:43-7.2.

Upon J.P.'s release, after a Megan's Law classification hearing, the Law Division judge classified him as a Tier II moderate risk of reoffense. The judge also concluded J.P. was not exempt from the Internet Sex Offender Central Registry, N.J.S.A. 2C:7-12 and -13. That each count related to a separate victim, she opined, meant that the household/incest exception was not available to J.P. In her view, no other reading of the statute would "make sense." We agree and affirm.

J.P. raises the following points of error:

> I. J.P. SHOULD HAVE BEEN EXCLUDED FROM THE INTERNET REGISTRY UNDER N.J.S.A. 2C:7-13(D)(2), THE HOUSEHOLD EXCEPTION, BECAUSE HIS CONVICTION IN 2014 FOR ACTS AGAINST HIS BIOLOGICAL SONS WAS "SINGLE CONVICTION" INVOLVING "MEMBERS OF NO MORE THAN A SINGLE HOUSEHOLD."
>
>> A. Since the phrase "members of no more than a single household" is plural, it applies to cases involving more than one victim, provided the offenses were committed within a single household.

B.    J.P. has a "single conviction" for purposes of the internet registry statute even though he was convicted of two counts, as he was convicted on one occasion without re-offense.

C.    Contrary to the State's argument below, the Attorney General Guidelines cannot be used to interpret a statutory provision that makes no mention of them.

N.J.S.A. 2C:7-13(d) enumerates exceptions from Internet registration of an offender's record. In order to qualify for an exception, an offender's risk level, like J.P.'s, must be no more than moderate, subjecting him or her to notification requirements including "schools, religious and youth organizations . . . in accordance with the Attorney General's Guidelines," in addition to "law enforcement agencies likely to encounter the person registered . . . ." N.J.S.A. 2C:7-8(c)(1) and (2).

The specific exception at issue requires the registrant's "sole sex offense" be a "conviction . . . under circumstances in which the offender was related to the victim by blood . . . ." N.J.S.A. 2C:7-13(d)(2). This is usually referred to as the "household/incest exception" to Internet registration.

J.P. contends that since the offenses were committed against members of a single household, albeit two separate children, he committed a "sole sex

3

offense." He argues he is thus exempt, as any other construction of the statute would render meaningless the following closing language to the pertinent section:

> For purposes of this subsection, "sole sex offense" means a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense which meets the criteria of paragraph (2) of this subsection, members of no more than a single household.
>
> [N.J.S.A. 2C:7-13(d).]

If J.P.'s crimes are construed as a "sole sex offense," then he is not subject to registration on the Internet.

As the Supreme Court has repeatedly stated, when addressing questions of statutory construction, our primary goal is to determine the intent of the Legislature. In re N.B., 222 N.J. 87, 98 (2015). "[T]he best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010); see also State v. Bolvito, 217 N.J. 221, 228 (2014) ("statutes, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning") (quotations omitted).

4

"When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close, without the need to consider extrinsic aids." State v. Shelley, 205 N.J. 320, 323 (2011). However, a court will seek out "extrinsic evidence, such as legislative history, for assistance when statutory language yields more than one plausible interpretation." Id. at 323-24 (quotations omitted). The Court has described the provision containing the household/incest exception as "ambiguous." N.B., 222 N.J. at 99.

"[A]n offender in the household/incest category . . . may qualify for the exception in a broader category of cases: those which involve 'no more than one victim, no more than one occurrence or . . . members of no more than a single household.'" Id. at 100 (quoting N.J.S.A. 2C:7-13(d) and noting that the household/incest exception is intended to be less restrictive than the other two exceptions contained in that section).

In N.B., the defendant-registrant was an individual convicted of one count of aggravated sexual assault who admitted to assaulting his half-sister multiple times when they lived together. Id. at 91-92. In applying the household/incest exception, the Court had to "determine whether the Legislature intended that an offender . . . qualifies for the household/incest exception notwithstanding his or

5                                                                           A-3147-18T1

her admission to more than one instance of sexual contact with a victim who is his or her relative." Id. at 97-98.

In deciding the meaning of "sole sex offense," the Court relied on Megan's Law committee statements noting the definition "help[s] ensure that the exemption from inclusion on the Internet registry is not improperly applied to repeat sex offenders who offend against more than one victim or who victimize a single individual more than once." Id. at 102 (citing S. Comm. Statement to S. 1208 (May 6, 2004); Assemb. Comm. Statement to S. 1208 (June 3, 2004)).

The Court therefore concluded "that the Legislature intended the household/incest exception to apply to a registrant whose single conviction otherwise meets the requirements of [the exception] and involves more than one instance of sexual contact with a single victim who is within his or her household." Ibid. However, the court did "not address whether an offender with a single conviction premised upon multiple acts upon multiple victims, all within the household and to whom the offender was related 'by blood or affinity to the third degree . . . ,' would fall within the household/incest exception . . . ." Id. at 102 n.7.

J.P. asserts that this case concerns the very issue the Supreme Court declined to address in N.B., whether an offender with multiple acts on multiple

victims, if within one household, fits within the household/incest exception. Thus, the real dispute is narrowed down to what the Legislature meant when it only made the exception available to an offender convicted of a "sole sex offense."

The parties agree that defendant meets many of the requirements of the household/incest exception by being a moderate risk of re-offense, being related to the victims, and having the victims within his household. It cannot be reasonably argued, however, that having pled guilty to two separate offenses, each involving a different victim, defendant entered a guilty plea to a "single conviction," or is guilty of committing only a "sole sex offense."

The use of the word "members" of a single household is not surplusage if the statute as applied in this case is given that construction. The reference to "members" could readily be a reference to a perpetrator and a victim, not just a reference to more than one victim. The plural usage cannot overcome the clear statement of intent and unequivocal language at the beginning of the sentence, that sole sex offense means "a <u>single</u> <u>conviction</u> . . . for a sex offense which involved no more than one victim . . . ." N.J.S.A. 2C:7-13(d) (emphasis added). In the context of Megan's Law reporting, we have previously said that the word "conviction" did not mean "judgment of conviction" for purposes of determining

A-3147-18T1

the timeframe in which to register under Megan's Law.  In re J.S., 444 N.J. Super. 303, 310, 313 (App. Div. 2016).

Furthermore, the cases upon which J.P. relies have to do with enhanced sentencing.  See State v. Anderson, 186 N.J. Super. 174 (App. Div. 1982); State v. Bowser, 272 N.J. Super. 582 (Law Div. 1993).  Even if the incest/household exception to Internet registration is available for a defendant family member who commits multiple sexual offenses against one victim, that does not mean that multiple charges as to separate victims are included.  See N.B., 222 N.J. at 100-03.  This was not a "sole sex offense," but two sexual offenses.  J.P. was properly subjected to Internet registration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3147-18T1