228 N.J. Super. 171 (1988)
549 A.2d 441
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT WOOTERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1988.
Decided October 7, 1988.
*172 Before Judges DREIER and BROCHIN.
*173 Mullaly & Mullaly, attorneys for appellant (E. James Mullaly, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Catherine A. Foddai, Deputy Attorney General on the brief).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
The defendant in this case pleaded guilty to three counts of burglary contrary to N.J.S.A. 2C:18-2 and three counts of theft of movable property valued in excess of $500.00 contrary to N.J.S.A. 2C:20-3a. Each of these counts also charged the defendant with accomplice liability. These guilty pleas were entered pursuant to a plea agreement by which the State agreed to recommend concurrent sentences on all of the counts and dismissal of other charges against the defendant.
The six counts of the indictment to which defendant pleaded guilty charged that he and his accomplices had committed theft and burglary at each of three separate residences. Two of those counts charged that the property taken from one of those residences included a rifle and a shotgun. The State contended in the Law Division that the defendant's guilty pleas to those counts required that he be sentenced to a period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c). In accordance with a right reserved in his plea agreement, the defendant argued to the contrary.
A hearing was held at which testimony was presented on the issue of the applicability of the Graves Act. The trial judge held that the statute was applicable. He sentenced the defendant to concurrent five year terms for all of the counts of the indictment to which the defendant had pleaded guilty. On the counts which charged the defendant with theft and burglary of a rifle and shotgun, the court imposed concurrent three-year terms of parole ineligibility pursuant to the Graves Act. This *174 appeal is taken solely from that imposition of parole ineligibility.
In its brief to this court, the State concedes, correctly, that the imposition of Graves Act parole ineligibility on the count of the indictment charging defendant with theft in violation of N.J.S.A. 2C:20-3a is error because that "crime ... does not trigger the Graves Act." The State suggests that since the trial court could have imposed a discretionary parole disqualifier pursuant to N.J.S.A. 2C:43-6b, this court "should amend the Judgment of Conviction to reflect a parole disqualifier of two and one half years on this count." That would not be appropriate, however, because the latter statute confers discretion upon the trial court to determine, in accordance with the statutory criteria, whether a period of parole ineligibility should be imposed and what should be the duration of any such period up to the statutory maximum. Since a remand is required in any event, the trial judge will have the opportunity to determine what, if any, minimum period of incarceration should be imposed on the theft count.
Defendant's guilty plea to the burglary count which charges a violation of N.J.S.A. 2C:18-2 does, of course, trigger Graves Act sentencing if the other statutory prerequisites are proved.
One of the theft counts to which the defendant pleaded guilty establishes that, either as a principal or as an accomplice, he "did unlawfully take the movable property of [the victim], that is, one rifle, shotgun...." At the Graves Act hearing, a State's witness testified that the defendant admitted to him that the defendant himself carried the rifle out of the victim's house. That testimony, if credited by the judge below, would be ample basis to support his conclusion that the defendant was subject to sentencing under the Graves Act. Insofar as pertinent, that statute reads:
"A person who has been convicted ... of a crime under any of [the enumerated statutory sections] . .. who while in the course of committing ... the crime, including the immediate flight therefrom . .. was in possession of a firearm ... shall be sentenced to a term of imprisonment by the court. The term of *175 imprisonment shall include the imposition of a minimum term ... during which the defendant shall be ineligible for parole." [Emphasis added] N.J.S.A. 2C:43-6C.
However, the judge below appears not to have relied upon the testimony presented at the Graves Act hearing. At the conclusion of that hearing, he noted that at the separate trial of one of the defendant's accomplices, he had heard testimony of an accomplice and of the defendant. Referring to the testimony at that separate trial, the court stated:
The court is satisfied by more than the preponderance of the evidence that the defendant was aware of the stealing of the weapons at the time of the burglary of the [victim's] residence. My recollection of the testimony is that [the defendant] said that he saw [an accomplice] carrying the weapons out, and [the accomplice] testified that he saw [defendant] carrying the weapons out.
Regardless of which it was, certainly [defendant] knew that this was part of the theft that was committed at the residence.
Again, the court is satisfied concerning that situation by more than the preponderance of the evidence, and the Court holds that [defendant] falls within the purview of the Graves Act....
If the trial judge was implying that if the defendant saw an accomplice carrying weapons out from the scene of their crime, that fact, without more, would constitute the element of "possession" necessary to subject the defendant to Graves Act liability, we disagree. That an accomplice took and removed firearms during the course of burglarizing a residence does not by itself establish that defendant is subject to the Graves Act. A defendant is subject to the Graves Act if in the course of commission of one of the enumerated offenses, including flight from the scene where that offense has been committed, he is in actual possession of a firearm (State v. Des Marets, 92 N.J. 62 (1982)), if he is in constructive possession, that is, able practically immediately to obtain actual possession (State v. Stewart, 96 N.J. 596 (1984)), or if he is an accomplice in an other's physical possession of a firearm (State v. White, 98 N.J. 122 (1984)).
In White, the Supreme Court said:
It is possible for an accomplice to be guilty of robbery and for his compatriot to be guilty of armed robbery.... However, if the accomplice, though found guilty only of robbery, knew or had reason to know before the crime was committed that his partner would possess or use a firearm while the crime was *176 being committed, or during the immediate flight thereafter, the trial court should apply the Graves Act. If the accomplice did not know or have reason to know beforehand that his partner would possess or use a firearm during those periods, then the Graves Act would be inapplicable. The deterrent effect  the raison d'etre  of the Graves Act is preserved. [Id. at 131.]
The weapons which figure in this case were unexpectedly found by the burglars at the scene of their crime. Therefore, if that language is applied literally, defendant in this case would not be subject to the Graves Act because he "did not know or have reason to know beforehand that his partner would possess ... a firearm...." However, for reasons which we shall explain, we do not think that the quoted language should be applied literally to the facts of this case.
In State v. Weeks, 107 N.J. 396 (1987), a case which explains the requisites of accomplice liability, the court reversed the armed robbery conviction of a defendant who was the "wheel man" in an armed robbery of a bakery. The jury was instructed as follows:
.... if you find beyond a reasonable doubt that the robber committed the crime of robbery and was armed with a deadly weapon or threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then the defendant could be guilty of robbery in the first degree if you find beyond a reasonable doubt that he was an accomplice or an aider or abettor in that robbery....
....
If you find that the defendant William Weeks willfully and knowingly aided, agreed to aid or attempted to aid another person in the commission of a robbery, then you must consider him a principal and equally guilty. [107 N.J. at 405]
Holding that those instructions were "plain error," the court said, "... what we find troubling is the fact that the jury may not have known that an essential element of the accomplice liability charged is that the accomplice share the purpose to commit an armed robbery." [Ibid. Emphasis in the original.] The instruction was defective, the court held, because it "did not clearly require the jury to find that defendant had shared the purpose to commit a robbery with a weapon." [Ibid. Emphasis in the original.]
*177 In a careful discussion of the concept of accomplice liability under the Code, the court noted:
The drafters of the Model Penal Code (MPC) originally presented a tentative formulation of accomplice liability premised on the culpable mental state of knowledge [footnote omitted] as the sufficient predicate for establishing the liability of the accessory.... This tentative formulation was rejected, and the MPC now specifically requires that the accomplice have the `purpose of promoting or facilitating the commission of the offense' of which the principal was convicted ... The language in N.J.S.A. 2C:2-6c(1) [the accomplice liability provision of the N.J. statute] is identical. [Id. at 402]
In a footnote, the court provides the following elaboration:
Examples were given by the MPC commentators of situations where guilty knowledge was deemed insufficient to warrant congruent liability: Farm boy clears the ground for setting up a still, knowing that the venture is illicit; a landlord rents with knowledge that the premises will be used to establish a house of ill repute. [Id. at 402-403, fn.]
In the light of that emphasis on purpose in contradistinction to mere knowledge as a prerequisite of accomplice liability, we conclude that the court was saying only that an accomplice's purpose to promote or facilitate the commission of the substantive offense of armed robbery may be inferred as a fact from the accomplice's participation in the crime after he "knew or had reason to know before the crime was committed that his partner would possess or use a firearm while the crime was being committed...." Weeks, 107 N.J. at 400; White, 98 N.J. at 131.
What is the significance for the instant case of the statement in White that "If the accomplice did not know or have reason to know beforehand that his partner would possess or use a firearm during those periods, then the Graves Act would be inapplicable."? [State v. White, supra. at p. 131. Emphasis added.] The offense of unarmed burglary to which defendant pleaded guilty was complete on his entry into the victim's house with the intent to commit theft. N.J.S.A. 2C:18-2; State v. Mangrella, 214 N.J. Super. 437 (App.Div. 1986), certif. den. 107 N.J. 127 (1987). Read literally, therefore, the language quoted from White would mean that a defendant whose partner found and removed weapons from the scene of a burglary would not *178 be subject to Graves Act liability as an accomplice if the defendant did not expect or have reason to expect before the burglary that weapons would be found there. But if one of two confederates encourages or assists his partner to remove unexpectedly discovered weapons, surely both should be subject to the Graves Act even though only one had physical possession.
In the factual context of this case, where "possession" of a firearm upon which Graves Act liability is based consists solely in the fact that the defendant's partner unexpectedly found a weapon in the house which they were burglarizing and carried it away, whether or not defendant is vicariously liable for having "possessed" a firearm depends upon whether he was "an accomplice" to the carrying away of the weapon which was unexpectedly found. In accordance with the teaching of White and Weeks, in order for the defendant to be an accomplice in that enterprise, he must be found to have had the purpose of promoting or facilitating the removal of the weapon. Proof of that purpose might include evidence that he knew once the weapon had been discovered that his partner intended to carry it away, but defendant's admission that he saw his confederate removing a weapon, without proof that he aided or facilitated the removal of the weapon, or shared his partner's purpose to do so, would not be sufficient.[1]
*179 On remand, imposition of a Graves Act sentence, if based upon this defendant's culpability as an accomplice and not upon his physical possession of a weapon, will require a finding that defendant consciously shared in his partner's purpose to remove a weapon from the burglarized premises as part of the loot.
Moreover, although the finding of a requisite element of a Graves Act offense may be based upon proof which would not be admissible in evidence at the defendant's trial (State v. Stewart, 96 N.J. 596, 606 (1984)), such a finding may not be based upon testimony of a witness at a trial to which the Graves Act defendant was not a party and whom he had no opportunity to cross-examine. N.J.S.A. 2C:43-6d, the statutory provision dealing with a Graves Act hearing, does not authorize a court to base its finding on such a source. The statute reads, "In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing or other court proceedings and shall also consider the pre-sentence report and any other relevant information." However, "the trial, plea hearing or other court proceedings" to which the statute refers are those in which the defendant participated or had the opportunity to participate. N.J. Evidence Rule 63(3) permits the use in a criminal proceeding of testimony given at a prior trial by someone other than the defendant only if the declarant is unavailable and if the issue at the former trial "was such that the present defendant had the right and opportunity for cross-examination with an interest and motive similar to that which he has in the present proceeding." That rule is of Constitutional dimensions. See Ohio v. Robert, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); State v. Biegenwald, 106 N.J. 13, 71 (1987). See also State v. Land, 73 N.J. 24, 37 (1977). Similarly, the "pre-sentence report *180 and other relevant information" which the court may also consider refers to information which has been submitted to the defendant and which he has had the opportunity to dispute. See Rule 3:21-2(b); State v. Kunz, 55 N.J. 128 (1969). On remand, the determination whether defendant is subject to Graves Act sentencing should be based on evidence presented at the Graves Act hearing and at defendant's trial and on other relevant proofs which defendant has the opportunity to challenge and dispute.
The case is remanded to the trial court for resentencing. We do not retain jurisdiction.
NOTES
[1] The question may be raised whether a defendant is subject to Graves Act liability under circumstances like those which may be presented by this case if, after learning that his accomplice is carrying away a weapon unexpectedly found at the site of their crime, the defendant does not attempt to prevent the enterprise or at least disassociate himself from it. N.J.S.A. 2C:2-6e(3) has a provision dealing with renunciation. That provision, however, states: "A person is not an accomplice in an offense committed by another person if:.... (3) he terminates his complicity under circumstances manifesting a complete and voluntary renunciation ... prior to the commission of the offense. Termination by renunciation is an affirmative defense which the defendant must prove by a preponderance of evidence." In other words, failure to renounce does not make a party an accomplice; it is only after a party has become an accomplice that his renunciation may become material by providing an affirmative defense to liability. Accomplice liability to Graves Act sentencing, or to any other consequence of vicarious culpability, depends on proof of a shared purpose.